Víctor Santiago, Plaintiff and Appellant, *v.* Isabel Torres Hernández de Matallana, Defendant and Appellee.

No. 8384. Argued March 25, 1942.—Decided April 20, 1942.

*Francisco Capó Pagán* and *R. Atiles Moréu* for appellant. *José A. Poventud* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This is an appeal from a judgment dismissing the complaint in the present action on a demurrer for prescription. In the complaint it is alleged that the plaintiff is a build-

ing contractor and about April 1924, the defendant, then a widow, entered into a contract with the plaintiff for the rebuilding of a house owned by the defendant for $18,000, all the expenses incurred in the work, including, of course, building materials, labor, workmen's compensation insurance, etc., to be for the account of the plaintiff; that in January 1925, the work was terminated and accepted by the defendant as entirely satisfactory to her, and on the 31st of the same month, she paid on account of the price fixed in the contract the sum of $9,921 and promised to pay the remaining $8,070 on January 31 of the following year, it being stipulated that the unpaid balance would bear interest at the rate of 10 per cent per annum; that the defendant has failed to pay either said balance or the interest thereon, amounting in all to $15,578.96; and judgment was demanded for the latter sum, with costs, disbursements, and attorney's fees.

The defendant pleaded that the action brought had prescribed under subdivision 2 of §1867 of the Civil Code, 1930 ed., and the court a quo upheld her contention.

The complaint incorporated in the transcript of record is a third amended complaint filed on April 3, 1941. It appears, however, from the judgment, and is admitted by the defendant and appellee in her brief, that the original complaint was filed on November 21, 1939, and, therefore, reckoning from the latter date there had elapsed thirteen years, nine months, and twenty days from the time the obligation became due, that is, on January 31, 1926.

The question to be decided is whether for the purpose of the prescription of the action brought, application lies of subdivision 2 of §1867 of the Civil Code, as claimed by the appellee, in which case said action would have prescribed as more than three years had elapsed from the time the services had terminated, or whether, on the contrary, as contended by the appellant, application should be made of §1864 of the same code, which provides that personal actions for

which no special term of prescription is fixed prescribe after fifteen years.

 It seems advisable for a better understanding of the matter under discussion to transcribe here §1867 of the Civil Code, which reads as follows:

"Section 1867.—Actions for the fulfilment of the following obligations shall prescribe in three years:

"1. For the payment of judges, lawyers, registrars, notaries public, experts, agents, and clerks, for their charges and fees and the expenses and disbursements incurred by them in the discharge of duties or offices in the matters to which the obligations refer.

"2. For payments to apothecaries for medicines which they have supplied; to professors and teachers for their salaries and stipends for the instruction they have given, or for the exercise of their profession, art, or trade.

"3. For the payment of mechanics, servants, and laborers the amounts due for their services, and for the supplies or disbursements they may have incurred with regard to the same.

"4. For the payment of board and lodging to innkeepers, and to traders for the value of goods sold to others who are not traders, or who, being such, are engaged in a different trade.

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

The section just transcribed is identical with §1967 of the Spanish Civil Code from which it was adopted, and the latter in turn had its origin in Law 10, Title 11, Book 10 of the Novísima Recopilación, "Los Códigos Españoles, Concordados y Anotados," vol. 9, p. 339, which reads as follows:

"Law X.—Debts incurred on account of servants' wages, medicines from pharmacies, groceries from shops, handiwork by artisans; and prescription thereof after the lapse of three years.

"Don Carlos and Doña Juana, in Madrid in the year 1528 pet. 157; and D. Felipe II in the Cortes of Madrid of 1567 pet. 39.

"We ordain that those who may have lived with any subjects of our kingdoms shall be entitled to claim any sums due them on account of wages or stipends or any other services rendered by them, within three years after being discharged by their masters; and that after

the lapse of such period, they shall be forever barred from claiming the same, unless they show that they have demanded payment from their masters within the aforesaid three years and the latter have failed to pay or satisfy the claims; and we likewise ordain this to be understood as applying also to apothecaries, jewellers, and other artisans, and to grocers, confectioners and other shopkeepers who sell foodstuffs, who, after the lapse of three years, may not recover for goods delivered from their stocks or for handiwork performed by them. (Law 9, Tit. 15, Book 4 R.)''

Said Law 10, as its title indicates, only included in the 3-year limitation period claims for servants' wages, medicines from pharmacies, groceries from shops, and handiwork by artisans. Its provisions were extended by the Spanish Civil Code so as to include, among other claims, those from ''Professors and teachers for their *salaries and stipends* for the instruction they have given, or *for the exercise of their profession, art, or trade.*''

We will not follow the parties in their lengthy discussion regarding the nature of a work and labor contract where the person who executes the work also furnishes the construction materials; for, in our judgment, the mere fact that a lease of services is involved does not render applicable subdivision 2 of §1867, which, as already indicated, and as we propose to show in the course of this opinion, is confined to the fees and stipends claimed by *professors and teachers for the instruction they have given, or for the exercise of their profession, art, or trade.*

Therefore, it becomes necessary to determine whether or not the case described in the complaint is covered by the provisions of subdivision 2 of §1867 of the Civil Code which we have already noted.

It does not appear on the face of the complaint that the plaintiff is a *professor* or *teacher* or that the subject of his claim is the payment of fees or stipends for instruction given by him or for the exercise of his profession, art, or trade. ''*Professor,*'' according to the *Diccionario Enciclopédico His-*

*panoamericano,* is a "person who practices a science or art," and *"teacher,"* according to the same authority, is "one who teaches a science, art or trade, or has a diploma authorizing him therefor." The term "fees" (*honorario*) is defined in said work as follows: "As a noun, the word *fees* means the salary or stipend paid to a person for his work, or the compensation granted in payment of certain services. The word *fees* is used to designate the compensation for services rendered by physicians, lawyers, ecclesiastics and others who are prevented by the dignity of their calling from receiving a salary." The term "stipend," according to the same dictionary, is "the pay or remuneration received by a person for his work or services."

A *building contractor* is not necessarily either a *professor* or a *teacher* within the meaning of those terms as used in the legal provisions under discussion. The fact is that in Puerto Rico, and more generally in the United States, the most important and costly works are carried out by corporations which contract for their execution and make all the necessary outlays, including of course labor, material, etc. Could it be contended, without incurring in a manifest absurdity, that an action brought by one of such corporations for the recovery of the price of a work is an action instituted by a *professor* or *teacher* to recover *fees* or *stipends* for the exercise of his profession, art, or trade?

A mere building contractor is not necessarily an expert in the art of building. Often persons engage in such business who have at their disposal sufficient capital or credit to undertake the work and who are advised by other persons familiar with the work to be done. The *professor* or *teacher* referred to in said legal provisions is, for instance, the architect or engineer who prepares the plans and specifications, or the person who directs or supervises the work; but it does not mean a mere contractor nor even an engineer or architect, nor an expert in such professions, who besides his

professional work includes in the contract the cost of materials, labor, etc. It is well known that professional services as such constitute a comparatively small portion of the cost of a construction work where the latter is of some importance by reason of the cost of the materials, labor, etc.

That it was not the purpose of the framers of the Code to extend said limitation period to a claim for the value of the materials, labor, etc., is shown by a study of the legal provisions themselves. It will be noticed that subdivision 3 of the section in question, when referring to the payment for services rendered by mechanics, servants, and laborers, also includes the amounts due for supplies furnished or disbursements made by them with relation thereto. The same thing was done in subdivision 1 as regards the obligation of paying judges, lawyers, registrars, etc., by including, in addition to *their charges and fees,* any *expenses or disbursements* incurred by them in the discharge of their duties or offices. But no similar provision is contained in subdivision 2 when referring to *professors* and *teachers,* thus confining the three-year limitation period to their claims for professional fees and stipends. If it had been the intention of the lawmaker to include, in addition to such fees and stipends, the value of the building materials, labor, etc., it would have been easy to say so, as was done in the two subdivisions previously mentioned.

Let us now see what Manresa says in construing §1967 of the Spanish Civil Code:

"Regarding this same rule of prescription, it has also been held by said (Supreme) Court in a judgment of March 21, 1905 (100 J. C. 628), that the limitation period pertaining to the claims of artisans and mechanics which is provided in the Constitution of Catalonia, 4th, tit. II, book 7, vol. 1, does not apply to all of them indiscriminately, but must be considered as confined to those arising from their personal work, just as it is provided in art. 1967 of the Civil Code, the limitation extending also to disbursements made or supplies furnished by them in connection with such work; and that the

ordinary term of prescription governs as to all other claims, said provisions not being applicable to a claim of a building contractor who includes therein the materials, his personal work, and that of other persons—a doctrine which, although laid down in a case subject to the Catalonian law, is equally applicable to any similar case that might arise and be subject to the general law.'' *Comentarios al Código Civil*, 1907 ed., vol. XII, p. 864. (Parenthetical matter supplied.)

The action herein being a personal action for which no special term of prescription is fixed, the same should prescribe, under §1864 of the Civil Code, after fifteen years. And since §1869 of the same code provides that ''the time for the prescription of all kinds of actions, when there is no special provision to the contrary, shall be counted from the day on which they could have been instituted,'' and such day, as appears from the complaint, was January 31, 1926, between which day and the filing of the original complaint on November 21, 1939, there had only elapsed, as already stated, thirteen years, nine months, and twenty days, it is obvious that the action brought had not prescribed, and therefore the court *a quo* erred in dismissing the same on that ground.

Consequently, the appeal must be sustained, the judgment appealed from reversed, and the case remanded to the lower court with directions to allow the defendant and appellee a reasonable term for answering the complaint, and to proceed with the case in conformity with the law.